# REPORTS OF CASES

DECIDED IN THE

# Supreme Court of the District of Columbia.

---

PHILANDO C. LANGDON *vs.* CHARLES E. EVANS.

LAW. No. 11,960.

{ Decided November 15, 1883.
{ The CHIEF JUSTICE and Justices HAGNER and JAMES sitting.

1. A written contract which is free from ambiguity cannot be explained or varied by parol evidence.
2. The rulings of the court below as to the order in which evidence shall be offered during the trial, are within the discretion of the presiding judge, and are not the subject of appeal.
2. An estoppel need not be specially pleaded ; it may be offered under the general issue.
4. But where the record of a judgment is offered in evidence in estoppel, and the identity of the parties, of the subject-matter, and of the pleadings, is not shown on the face of the record, it must be established by extrinsic proof before the record is admissible.
5. And where such extrinsic evidence is offered, it is competent for the other side to adduce evidence in reply.
6. But where the plea is the general issue, the plaintiff cannot, in his case in chief, offer evidence in estoppel in anticipation of a supposed defence of the defendant, since, *non constat*, that the defendant may make such defence.
7. The credibility of a witness is open to impeachment by proof that he had made a statement before a Congressional committee on a designated day at variance with his present testimony, but this cannot be done by reading for that purpose the alleged testimony from a page in an unauthenticated book styled a Congressional investigation.
8. A conviction and sentence for a felony in the State of New York does not render the party incompetent as a witness in the courts of this District, that State being, *quoad hoc*, a foreign jurisdiction.
9. An exception contained the charge of the court and stated " and to so much of the said instructions granted by the court, on its own motion, as are contained in brackets," plaintiff excepts, &c., upwards of two pages of the charge were thus contained in " brackets ;"

*Held*, that the exception being a wholesale one—pointing out no particular remark in the charge as incorrect—did not properly present to this court any question which it was called upon to examine.

The Case is stated in the opinion.

H. H. Wells, for plaintiff, cited :

1 Gr. Ev., §§ 283, 300 ; 2 Pars. Cr., 566 ; Wright *vs*. Pond, 10 Conn., 255 ; Carter *vs*. Holman, 6 Mo., 498 ; 2 Pars. Cr. (5th ed.), 560, and cases cited in note *g*, *et seq.* ; Bradley *vs*. A., W. & G. Steam Packet Co., 13 Pet., 97 ; Phelps *vs*. Closen, 1 Wool., 204 ; Kock *vs*. Dunckle, 90 Pa. St., 264 ; Steadman *vs*. Taylor, 77 N. C., 134 ; Jones *vs*. Dove, 6 Org., 188 ; S. Falls M. Co. *vs*. Goddard, 14 How., 446 ; Atkinson *vs*. Cummins, 9 How., 479 ; 2 Pars. Cr., 513, and note *o* ; Boyle *vs*. Colman, 13 Barb., 42 ; Hanley *vs*. Cole, 27 Me., 35 ; Underhill *vs*. New York, &c., 21 Barb., 489 ; 1 Gr. Ev., § 51*a* ; McAllister's Case, 11 Shep., 139, and cases cited in the note to the last section ; Carrol *vs*. Granite, &c., 11 Md., 399 ; Hatton *vs*. McElesh, 6 Md., 407 ; Hall *vs*. Patterson, 51 Pa., 289 ; Woodman *vs*. Dana, 52 Me., 9 ; Hopkins *vs*. Lee, 6 Wh., 109, 114 ; Aspden *vs*. Nixon, 4 How., 467–497 ; Wash., A. & G. S. P. Co. *vs*. Sickles, 24 How., 333–342 ; Young *vs*. Black, 7 Cr., 565 ; Wood *vs*. Jackson, 8 Wend., 10 ; Lawrence *vs*. Hunt, 10 Wend., 80 ; Boynton *vs*. Morril, 111 Mass., 4 ; Hood *vs*. Hood, 110 Mass., 463 ; Boloit *vs*. Morgan, 7 Wall, 619 ; City of Sacramento *vs*. Fowle, 21 Wall., 120 ; Cromwell *vs*. County of Sac, 94 U. S., 351 ; Campbell *vs*. Rankin, 99 U. S., 261 ; Davis *vs*. Brown, 94 U. S., 423 ; Castle *vs*. Noyes, 14 N. Y., 329 ; Young *vs*. Bonnell, 2 Hill, 478 ; Hampton *vs*. McConnell, 3 Wh., 234 ; McElmory *vs*. Cohen, 13 Pet., 312 ; Miles *vs*. Duryee, 7 C., 481 ; Conrad *vs*. Griffey, 16 How., 38 ; Many *vs*. Jogger, 1 Blatch. C. C., 372 ; Angus *rs*. Smith, 1 M. and Malk, 473 ; Crowley *vs*. Paige, 7 Car. & P. 789 ; 1 Wh. Cr. Law, § 762.

Eugene Carusi and B. E. Valentine, for defendant, cited :

Russell *vs*. Place, 4 Otto, 606 ; Etheridge *vs*. Osborne, 2 Wend., 399, 62 N. Y., 374 ; Gr. Ev., vol. 1, sec. 376. Commonwealth *vs*. Green, 17 Mass. 515, 539–549 ; Beaver *vs*.

Taylor, 3 Otto, 46–55; Rogers *vs.* The Marshal, 1 Wall., 644; R. R. Co. *vs.* Varrell, 8 Otto, 379–482; Newell *vs.* Doty, 33 N. Y., 83.

Mr. Justice HAGNER delivered the opinion of the court.

This is an action of replevin instituted by the plaintiff to obtain possession from the defendant of sundry chattels mentioned in the declaration, consisting of steam engines, composition kettles, asphalt, &c., &c., situated in the works of the Evans Paving and Artificial Stone Co., at 17th street, and on Easby's wharf, in Washington, of the value of $15,-000. The property was, under the writ, delivered to the plaintiff. The defendant pleaded the general issue, and the jury found a verdict in favor of the defendant for $12,-500. To the rulings of the court at the trial, sundry exceptions were taken on the part of the plaintiff.

1st exception. The plaintiff, to support the issues on his part, read in evidence articles of agreement between the defendant and one Theodore A. Stratton, dated December 1, 1873. By the first paragraph, Evans contracted to sell to Stratton all that part of the business of the Evans Concrete Paving Company which was situated in the city of Washington, together with all the machinery, &c., and materials and the good will of the business, to be clear of incumbrances, at the price of $131,750, which was to be paid by the conveyance by Stratton to Evans of five parcels of land in the town of Montery, county of Berkshire, Mass., containing together 810 acres, with the appliances thereon for making maple sugar; the conveyances to contain general warranty of title. By the agreement it was further contracted that Evans was to sell to Stratton another lot of machinery, tools, materials, &c., and all the other personal property described in a schedule annexed, pertaining to the business known as the Evans Roofing and Paving Company, situated in the city of Brooklyn; to be free of incumbrances; and this Brooklyn property was to be paid for by the conveyance from Stratton to Evans of another piece of land in the same town in Massachusetts containing 723 acres. It

was further agreed that Stratton should promptly furnish the necessary material for finishing all uncompleted work in the city of Brooklyn and in the District of Columbia, previously contracted for by Evans; and for keeping in repair the work already finished. The plaintiff then read in evidence a bill of sale from Evans to Stratton, dated December 8, 1873, transferring the business at Brooklyn and the machinery, &c., "as per schedule hereunto annexed and made part of this bill of sale;" and also another bill of sale from Evans to Stratton, dated December 5, 1873, of all the machinery, material, &c., in the city of Washington, described in the agreement. "And in further support of said issues and to establish his title to the goods and chattels mentioned in the declaration," he offered in evidence another bill of sale, from Stratton to the plaintiff Langdon, dated December 29, 1873, in these words:

"For and in consideration of the sum of *sixty* thousand dollars to me in hand paid by Philando C. Langdon, and for other valuable considerations, the receipt whereof is hereby acknowledged, I do hereby assign, transfer and set over unto the said Philando C. Langdon, his executors, administrators and assigns, the business at Brooklyn, Kings county, State of New York, and Washington, D. C., known as the 'Evans Concrete Paving Company,' and the 'Evans Roofing Company,' with all the machinery, tools, implements and personal property, the same property which was conveyed, sold, delivered and transferred to me by Chas. E. Evans by bill of sale dated the eighth day of December, A. D. 1873, and which will more fully appear by the schedule annexed to the bill of sale made by said Evans, and which is made part of this bill of sale."

To the introduction in evidence of this paper writing, the defendant, by his counsel, objected, and the court sustained his objection; and this ruling constitutes the subject of the first exception.

In our opinion, this decision of the court was correct. The property which was the subject of this suit was situated in Washington, and was quite distinct from the personal prop-

erty in Brooklyn. But the bill of sale so offered in evidence expressly declared that the property thereby conveyed was the same property which was conveyed, sold and transferred by Evans to Stratton by bill of sale of the 8th of December, 1873, "and which will more fully appear by the schedule annexed to the bill of sale made by said Evans, and which is made part of this bill of sale." This bill of sale of the 8th of December, and the annexed schedule, comprehended only the Brooklyn property, and had no reference whatever to the personal property in Washington city. It was, therefore, irrelevant to the issue before the jury, since it could not conduce to prove that Stratton had conveyed the Washington property to Langdon. The construction of the paper was, of course, for the court; and we think no other interpretation could be given to it than that it related solely to the property in Brooklyn. It was insisted, however, that the plaintiff should have been allowed, as his counsel asserted he could have done, to introduce testimony to show that it was designed by the parties that the bill of sale of December 29th should also convey the Washington property; and the propriety of the admission of such parole evidence was claimed upon the ground that a latent ambiguity existed in the paper which could thus be made the subject of explanation. Even if this offer had been made at the trial below, which was not the case, we cannot see that the court could possibly have held that any latent ambiguity, authorizing such explanation, existed. The trouble with the plaintiff's case was that the paper was too free from ambiguity; for the reference to the property designed to be passed was so plain as not to admit of question. It was the Brooklyn property, and none other. An offer, then, to show that the Washington property had been referred to in the bill of sale, instead of the Brooklyn property, or that it should also have been included along with the other, would have been inadmissible under the plainest principles of law. The case is exactly within the decision of this court, in the case of Patch *vs.* White, 1 Mackey, 468, where we refused to allow the plaintiff in ejectment to introduce testimony to

show that a devise of "lot No. 6 in square 403," should be read as a devise of "lot No. 3 in square 406."

But the rejection of this evidence, even if erroneous, became immaterial in the further progress of the case, as the bill of sale objected to was subsequently read in evidence without objection.

2d exception. The plaintiff then offered evidence tending to prove that, about the 30th of December, 1873, Stratton, being then in actual possession of all the property so conveyed to him by Evans, delivered to the plaintiff an inventory of the tools and materials of the Evans Concrete Co., on Seventeenth street, in the city of Washington, and at the same time gave him manual possession of said goods and chattels. After the witness had been turned over to the defendant for cross-examination, the plaintiff offered in evidence, during the cross-examination of the witness (who was the plaintiff Langdon), as an estoppel, an exemplified copy of a record of the Supreme Court of New York for the county of Kings, in a cause there tried and determined, in which the plaintiff in this suit was plaintiff, and the defendant in this suit was defendant. This record consisted of a complaint filed by Langdon against Evans, in which he claimed to recover possession of a quantity of personal property, consisting of engines, wagons, materials, &c., about the yard at the corner of Fourth avenue and Water street, in the city of Brooklyn; and of three pleas interposed by the defendant, Evans, asserting property in the goods on his part. Then followed the entry of a verdict of the jury for $6,000 in favor of Langdon, and of the judgment that the plaintiff retain possession of the property, and recover his costs of suit. "To the introduction in evidence of the said exemplified copy of the said record, the defendant, by his counsel, objected, on the ground that it was not an estoppel, and *on the ground of the time at which it was offered;"* and the court sustained his said objection, and would not permit the said record to be read or given in evidence. And this constitutes the second exception.

Apart from every other objection, the judge was right in

refusing to allow the cross-examination to be broken in upon by this new matter, offered out of season by the plaintiff. But if his action was of questionable propriety, it is well settled that all rulings as to the order in which evidence shall be offered during the trial, are within the discretion of the presiding judge, and are not the subject of appeal. If authority were needed for this reasonable proposition, it may be found in Bannon *vs.* Warfield, 42 Maryland, p. 26.

3d exception. When the plaintiff resumed his testimony, he offered, as part of his evidence in chief, testimony to prove that on December 30, 1873, he went into possession of the property in Washington, mentioned in the schedule, and remained in actual possession until the 5th day of February, 1874, when it was forcibly taken out of his possession by the defendant. And the plaintiff again offered the bill of sale of December 29, 1873, which was admitted by the court and read to the jury; and he then again offered in evidence the said record of the Supreme Court of King's county; "and in connection therewith, he offered as matter of estoppel upon defendant, to show by parol proof that the issues in that case were identically the same as the issues in this case, that the validity of the title derived by Langdon from Evans, which is in issue in this case, was at issue in that case, and that the verdict and judgment in that case was between the same parties that are plaintiff and defendant in this case; that the subject-matter and evidence in that case were the same as in this case; and that all the paper writings offered and proved in this case, excepting the judgment record, were offered, proved, and read in evidence in that cause."

"To the introduction of evidence of the last named record, and of the said parol proof in connection therewith, as matter of estoppel, the defendant, by his counsel, objected; and the court sustained his objection, and would not permit the said record to be read, or the said parol proof to be given in evidence, to the jury."

This exception involves the examination of the principles governing the introduction of a judgment record as an

estoppel, or as conclusive evidence in a case. It is well settled that it is not essential that an estoppel should be specially pleaded. The judgment may be offered in evidence equally under the general issue. But it is also well settled that if the record of the judgment so offered does not, on its face, demonstrate the identity of the parties of the subject-matter, and of the pleadings, it is requisite, before it can be admitted as evidence, to establish that identity by extrinsic proof. And it has been equally well determined, that if the plaintiff offers such evidence, it is competent for the defendant to adduce evidence in reply. The law of this subject is very clearly expounded in the case of Sickles *vs.* Packet Co., 5 Wallace, 580. The plaintiff, the patentee of the Sickles Cut-off, sued the defendant in the Supreme Court of this District to recover for the use of the invention on its steamboats, for a designated period. The declaration averred that the parties had made a contract by which the company agreed to pay the patentee for the privilege, a certain proportion of the saving of fuel resulting from its use; the amount of this saving to be ascertained by the steamboat company feeding the engines from two equal piles of wood, one to be used with, and the other without, the cut-off. The defendant pleaded the general issue. On the trial, the plaintiff, without otherwise proving the contract declared on, offered to read in evidence the record of a previous recovery in the same court in an action brought by the same plaintiff against the company, for the use of the cut-off for a period preceding that comprehended in the pending suit. The declaration in the suit thus offered in evidence contained four counts. The first described the contract precisely in the language of the declaration in the pending suit; the second and third were the money counts for a *quantum valebat,* and the fourth was a special count' alleging a similar contract, but not describing the mode in which the saving was to be ascertained. The verdict in that first action was rendered generally in favor of the plaintiff; but subsequently the judgment was entered upon the first count only of the declaration. The trial court admitted this

record of the former recovery, without any extrinsic evidence in its aid or explanation, and refused to allow the defendant to offer proof disputing the existence of the. contract, or disproving any of the other averments in the declaration.

The Supreme Court of the United States held, on appeal (24 Howard, 334), that this ruling was erroneous; that the record was properly admitted as evidence of the former trial between the parties; but as the pleadings, verdict and judgment did not of themselves furnish the necessary proof that the contract in controversy in the case then on trial was the same that had been litigated in the former suit, extrinsic evidence was requisite on the part of the plaintiff to establish the identity of the controversy; and that notwithstanding his omission to adduce it, the defendant had the right to offer the proof which was ruled out by the court. The case was accordingly remanded to the Supreme Court of the District of Columbia. At the retrial, the plaintiff again introduced the record of the former recovery, and in support thereof offered the testimony of jurors who were impanelled in the cause described in that record, to show what was the evidence given at that trial, to prove that the contract described in the declaration in the pending case had been in controversy in the prior suit, and had there been conclusively adjudicated in his favor. Thereupon, when the plaintiff rested, the defendants offered to prove that the only contract given in evidence on the former trial was verbal, their avowed purpose being to avail themselves of the provision in the Statute of Frauds, that no suit shall be brought to charge any person upon any agreement, not to be performed in one year, in the absence of some memorandum or note in writing. The evidence thus offered was excluded by the trial court, and the propriety of this ruling was brought before the Supreme Court by a second appeal, which is reported in the case cited from 5th Wallace. In this last case the judgment of the court below was again reversed, the Supreme Court holding that it was competent for the defendant to offer the excluded testimony as rebutting evidence, to disprove the plaintiff's allegation as to the identity of the

subject involved in the two suits. The court says: "But this extrinsic evidence (offered by the plaintiff) was open to be controverted on the part of the defendants. As the record itself did not furnish evidence of the finding of the existence or validity of the contract in the former suit, and hence extrinsic proof was required to this effect, it was of course competent for the defendants to deny and disprove both, as in so doing they did not impeach the record, but only sought to disprove the evidence introduced by the plaintiffs. The rejection of this evidence, therefore, offered by the defendants on the trial, was error."

The court further says: "As we understand the rule in respect to the conclusiveness of the verdict and judgment in a former trial between the same parties, when the judgment is used in pleading as a technical estoppel, or is relied on by way of evidence as conclusive, *per se*, it must appear, by the record of the prior suit, that the particular controversy sought to be concluded was necessarily tried and determined; that is, if the record of the former trial shows that the verdict could not have been rendered without deciding the particular matter, it will be considered as having settled that matter as to all future actions between the parties; and further, in cases where the record itself does not show that the matter was necessarily and directly found by the jury, evidence *aliunde*, consistent with the record, may be received to prove the fact; but, even when it appears from the extrinsic evidence that the matter was properly within the issue controverted in the former suit, if it be not shown that the verdict and judgment necessarily involved its consideration and determination, it will not be included."

It appears in the case before us, that the record, with the accompanying offer of evidence, was presented as part of the plaintiff's case in chief before the defendant had entered upon his case or had indicated what his line of defence would be otherwise than by his plea of the general issue. The offer, therefore, to show that the evidence in the King's county case was identical with that in the present proceeding, was purely conjectural; for it was impossible for him at that

stage of the case to predict what the defendant would offer to prove; and if the record had been received when it was offered, as an estoppel, the case would thereby instantly have been settled against the defendant, and he would have been prevented from adducing a word of evidence to meet the parol proof of the plaintiff. *Non constat* that the evidence which the defendant was then prepared to offer might not have been essentially different from that presented in the Brooklyn case. For he might have denied the execution of the agreement, or of the bills of sale, or might have insisted that the property sought to be recovered in the present suit was no part of that which had been originally sold by Evans to Stratton. And whether these defences or others were to be interposed could only be ascertained by allowing the defendant to proceed with his evidence. Besides, it is manifest that the title to the Washington property could not properly have been in issue in the Brooklyn case, for by the original agreement, the contracts as to the Washington and the Brooklyn property were entirely independent of each other. The price of the Washington property is specified in the agreement as $131,000, and that property was to be paid for by five pieces of land amounting, together, to 810 acres; whereas, the Brooklyn property was valued at half that sum, and was to be paid for in a different parcel of land containing 723 acres. It was quite possible, therefore, that the consideration for one of these purchases might fail, while that for the other might be maintained. It was not a case where the several portions of a property sold are parts of a whole which must be used together, although separate valuations of the portions may be mentioned in the contract of sale merely for convenience; as, for example, where a ship is sold for a gross sum, and the hold is valued as representing a certain part of the amount, and the rigging another. But here the two sales were independent and distinct; and the failure of consideration as to the Brooklyn property would not necessarily imply a similar failure with respect to the property in Washington. We think the court was certainly right in

refusing to admit the record as an estoppel at the time and in the manner in which it was offered.

If, however, the record had been offered as evidence, and the plaintiff at the proper stage of the case, had adduced parol proof to show what was in issue in the Brooklyn case, and it had appeared, after the defendant had offered his evidence in rebuttal, that the issues and evidence were the same in the two cases, such a judgment would have operated conclusively in favor of the plaintiff. But this course was not pursued.

It is morever admitted at bar by the counsel, that the Brooklyn judgment has since been reversed; so that if this court were to hold that the record had been improperly excluded below, our ruling could be of no benefit to the plaintiff, since it would not now be possible for him to offer the record of the reversed judgment in evidence for any purpose, on a new trial.

4th exception. After the plaintiff had rested, the defendant, Evans, testified that Stratton had made material false representations as to the Berkshire lands which formed the consideration of the bills of sale executed by him, to Stratton, of the personalty in Brooklyn and Washington, and of the unexecuted paving contracts in those cities; that he relied upon those representations when the bargain was made, and that he did not discover their falsity until the latter part of January, 1874, after the lands had been conveyed by Stratton to the wife of the defendant; that he had never accepted those deeds of the lands, and as soon as he discovered the falsity of these representations he had rescinded the bargain and had resumed possession of the Brooklyn and Washington properties, and had re-entered upon the completion of the unfinished contracts. The bill of exceptions then says, "and it becoming important and material to prove whether the said defendant had not, after discovering the character of said representations, used the said lands so deeded to his wife, to qualify her to become a surety possessing real estate of the value of $200,000, on the 5th of February, 1874, on certain bonds for $185,000, to be

given to the Board of Public Works of the District of Columbia, the defendant was asked on the cross-examination by the plaintiff's counsel, whether he did not so use said lands at the time, in the manner, and for the purpose stated; and he having in answer thereto testified on cross-examination that he did not so use said lands, he was then further asked by the plaintiff's counsel the following question:

" Q. Were you examined as a witness on this subject in the Congressional investigation, on the 18th of April, 1874?"

The court thereupon suggested that, instead of going into the matter of that investigation, the counsel should produce the bonds on which it was said Mrs. Evans had been taken as surety, which the plaintiff's counsel stated he was not then prepared to do. The exception then shows the following colloquy:

" Mr. WELLS: I ask this witness whether he did not, on the 18th day of April, 1874, testify before the Congressional committee in relation to this very subject, that he had repeated notices from the board to come forward and sign the contracts and the bonds, and that he informed the attorney of the board—

" Mr. VALENTINE: I object.

" Mr. WELLS stated that he proposed to read from page 1237 of the printed record of the Congressional investigation as to what was then said by the witness on the subject.

" Objection sustained. Exception reserved by Mr. Wells."

As well as we can understand the point designed to be presented here, we think the exception is not maintainable. The witness Evans, after he had testified that he had repudiated the agreement with Stratton, and refused to acknowledge the validity of the transfer of these lands as early as January, 1874, was asked whether he had not, in the following month, offered to pledge those very lands standing in his wife's name, by the bonds referred to.

We think this was a proper question on cross-examination, it not referring to matters that could properly be considered collateral; therefore it was competent for the plaintiff to

prove directly that the defendant had in fact pledged the lands in February, 1874, notwithstanding his denial. The court's suggestion that the plaintiff produce the bonds themselves, was an intimation that such evidence would be received. The credibility of the defendant as a witness was also open to impeachment by proof that he had made a statement at variance with his present denial, before the Congressional committee on a designated day. But this inquiry was not properly addressed to the truth or falsity of the principal subject of inquiry, but could only be admissible upon the question of his credibility as a witness. To this question the witness replied in the negative. The plaintiff then had a right to show, by competent testimony, for the purpose of such impeachment, that the defendant had made a different statement; but the offer to read, for that purpose, the alleged testimony from a page in an unauthenticated book styled a Congressional investigation, was properly excluded.

The exception then proceeds:

"Whereupon the plaintiff, by his counsel, asked the witness whether he did not, on the 18th day of April, 1874, testify before the Congressional committee in relation to this very subject, that he had repeated notices from the board to come forward and sign the contracts and the bonds, and informed the attorney for the board, as is stated on page 1237 of the printed record of the "Congressional investigation," which the plaintiff thereupon offered to read, and which was and is as follows:

And the exception then sets forth nearly three pages of printed matter, said to be copied from the alleged "Congressional investigation," and then proceeds: "To which last question and offer the defendant, by his counsel, objected; which objection the court sustained, and would not allow the said question to be asked, or the said testimony given by the defendant before the said Congressional investigation to be read."

We think this ruling was correct upon several grounds. The transactions referred to in the pages thus taken from

the "Congressional investigation" do not tend to disprove
the statement of the defendant.   They refer to transactions
which were said to have occurred in October or November,
1873.

If it be proved that Evans had, in the fall of 1873, offered
his wife as a surety upon the bonds referred to one or two
months before the agreement for the purchase of the lands
had been made, and, of course, before Evans or his wife had
any right to pledge them, it would not have tended to prove
that he had offered them as security on the 5th of February,
1874, which was the date mentioned in the question pro-
pounded to the defendant and by him answered in the
negative.   Such evidence, therefore, could not have been
admissible to contradict Evans as to the alleged occurrence
in February following.

Again, there is nothing in the extracted testimony which
even tends to show that the property, which it is averred
Mrs. Evans was willing to pledge in the fall of 1873, was
the property in Berkshire county, Massachusetts.   For
aught that appears in that extract, the land may have been
situated in Ohio or Louisiana.   The innate improbability of
the idea that Evans had offered to pledge the Berkshire
land in February, 1874, to secure his paving contracts in
Washington city, is made apparent, when it is considered
that in December, 1873, Evans had turned over to Stratton
all these contracts, and had washed his hands of all further
connection with them, and that it was not until he repudi-
ated the agreement, in January, 1874, that he resumed con-
trol of those contracts.   It surely would have been a most
extraordinary act on the part of this man, whose resumption
of the Washington contract was predicated solely of his
having repudiated the bargain as to the Berkshire lands to
claim ownership over them anew a month afterwards, and
offer to pledge them as a means of carrying on the contract
which he had only resumed because of his refusal to have
anything further to do with the Berkshire property in any
manner, shape or form.

. 5th exception.   The defendant then offered and proposed

to examine Theodore A. Stratton, who was sworn as a witness. The plaintiff objected to his examination, on the ground that he had been previously convicted of a felony, and had served out a sentence in the penitentiary; and he offered in evidence a record of Stratton's conviction, in a court of New York city, for an attempt to induce another to commit perjury. The court overruled the objection, and held that the witness was competent to testify.

We think this ruling also was correct. The conviction took place in the State of New York, which, *quoad hoc*, is to be considered as a foreign jurisdiction with respect to this District. In 1st Greenleaf's Evidence, § 376, the author concludes his examination of the question, which he admits has been the subject of disagreement in the courts, in these words: "But the weight of modern opinions seems to be that personal disqualifications, not arising from the law of nature, but from the positive law of the country, and especially such as are of a final nature, are strictly territorial, and cannot be enforced in any country other than that in which they originated. Accordingly, it has been held, upon great consideration, that a conviction and sentence for a felony in one of the United States did not render the party incompetent as a witness in the courts of another State; though it might be shown in diminution of the credit due to his testimony."

Whether the offence charged in the record of conviction was a felony in New York city, does not appear, but we see no reason to doubt that the same rule would apply if it were only a misdemeanor. There was read at bar a public statute of the State of New York, which declares that a person convicted of a crime or misdemeanor in that State is, notwithstanding, a competent witness in a civil or criminal action or civil proceeding depending in its courts. It would be a questionable exercise of judicial power for a court of this District to hold a person incompetent to testify because of his conviction in a jurisdiction where that conviction would not be held to disqualify him as a witness. Other reasons were assigned why the witness should not have been held

competent, as that he had served out his term, and that an ancient statute of Maryland, in force at the cession of this District, would have justified his examination; but it is unnecessary to pursue the inquiry, as we think the witness was clearly competent for the reason first assigned.

6th exception. After the evidence was closed, the court granted ten prayers offered by the plaintiff, and a large number offered by the defendant; and thereupon, of its own motion, gave the charge which is set out in the record. This exception states that the plaintiff excepted to each of the prayers granted on the application of the defendant, "and to so much of the said instructions, granted by the court on its own motion, as are contained in brackets."

We see no error in the instructions excepted to. Such of them as presented any question open to question, have been practically settled in what we have already said.

With respect to the exception taken to two printed pages of the charge "contained in brackets," we remark, that it has been repeatedly announced by the courts of highest resort in this country, and notably by the Supreme Court of the United States, that an exception conceived in such language as this, does not properly present to the appellate court any question which it is called upon to examine and decide. It is well settled, says the Supreme Court in Rodgers *vs.* The Marshal, 1 Wallace, 644, that if a series of propositions be embodied in instructions, and the instructions are excepted to in mass, if any one of the propositions be correct, the exceptions must be overruled. Again, in Beaver *vs.* Taylor, 3 Otto, p. 55, the same court says: "It is not the duty of a judge at the circuit court, or of an appellate court, to analzye and compare the requests and the charge to discover what are the portions thus excepted to. One object of an exception is to call the attention of the circuit judge to the precise point as to which it is supposed he has erred, that he may then and there consider it and give new and different instructions to the jury, if in his judgment it should be proper to do so. And in Railroad Company *vs.* Varnell, 8 Otto, 484, the court says: "Neither the

3

exception nor the assignment of error designates any particular remark of the judge as erroneous; and in view of the fact that the exception is addressed to the entire remarks as an instruction, the court is of the opinion that it requires no further examination." Exceptions of this kind are not entitled to favor. Nothing could be more unjust to the judge presiding below than to interpose such a wholesale objection without pointing out any particular remark as incorrect, and then take the risk of inducing the appellate court to range through the whole charge and find some specific objection where the counsel was not able to do so at the proper time. We would not be justified, therefore, in the face of reason and of these rulings, in reversing upon this drag-net exception, even if we found some errors within the metes and bounds, courses and distances platted on the record. But a careful examination of half of the charge thus indicated satisfies us that the greater part of it consists of propositions of law that cannot be disputed, and were not disputed in the argument here, and that the few sentences complained of are not obnoxious to the criticism of the plaintiff.

This is the second time this case has been before a jury, and a verdict has now been rendered which it is to be hoped will put an end to the further litigation of this subject; and we are not disposed to strain a point to enable one of these parties to compel the other to embark in further strife.

The judgment below is affirmed.